UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TAMMY GEORGE | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 15-14-RLB |
| FRESENIUS MEDICAL CARE | |
| NORTH AMERICA, ET AL. | CONSENT CASE |

RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff's Motion for Summary Judgment. (R. Doc. 29). The motion is opposed. (R. Doc. 34).

**I.   Background**

On or about November 21, 2014, Tammy George ("Plaintiff") filed this proceeding in Louisiana state court alleging that she was discriminated against by her employer Bio-Medical Applications of Louisiana, LLC ("BMA")[1] and her direct supervisor Sheryl Wilcutt in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") (R. Doc. 1-1, "Petition"). Plaintiff alleges that she was subjected to a hostile work environment based on her race (African-American) and her disabilities (breast cancer and lymphedema). With regard to her Title VII claims, Plaintiff also alleges that she was retaliated against by her employer. BMA removed the action on January 12, 2015. (R. Doc. 1).

Plaintiff claims that Wilcutt racially profiled her and created a hostile work environment. (Petition, ¶¶ 3, 7). Plaintiff alleges that she "was made to endure racial slurs which were spoken to her by [Wilcutt]," including the use of the term "Monkeys" to categorize African-Americans.

---

[1] BMA asserts that it was wrongly identified as "Fresenius Medical Care North America" in the Petition. (R. Doc. 20 at 1).

(Petition, ¶ 4). Plaintiff further claims that her supervisor compelled her to pick up heavy containers despite being aware Plaintiff was diagnosed with breast cancer and lymphedema. (Petition, ¶ 5). Plaintiff claims she requested relief from lifting or handling objects equal to or in excess of four pounds, which was denied, and had to take FMLA medical leave in September of 2013 as a result of a lifting injury. (Petition, ¶ 6). Plaintiff further claims she "was constantly blamed for offenses she did not commit, and she was threatened with termination on a daily basis." (Petition, ¶ 6). Finally, Plaintiff claims that Wilcutt retaliated against her "[w]hen the plaintiff attempted to address concerns regarding the disparate treatment which white employees were not made to endure." (Petition, ¶ 7).

Plaintiff moves for summary judgment on the issue of liability on all of her claims, seeking "a determination that the plaintiff's allegations are evidentiary *Prima Facie proof* and therefore there remain no genuine issues of material fact remaining save a monetary determination as to the damages the plaintiff has suffered." (R. Doc. 29-1 at 1). Plaintiff argues that she has provided uncontroverted testimony that establishes BMA's liability. (R. Doc. 29-1 at 3-8). In support of this contention, Plaintiff submits a Statement of Uncontested Material Facts. (R. Doc. 29-2), attached to which are 18-pages of typewritten journal entries by Plaintiff (R. Doc. 29-4, "Exhibit A").

BMA argues that Plaintiff's Motion should be denied on the basis that Plaintiff has not set forth competent evidence in support of her Motion because "Exhibit A" constitutes inadmissible hearsay and is conclusory, self-serving, and incompetent. (R. Doc. 34 at 3). Furthermore, BMA argues that Plaintiff's Statement of Uncontested Facts does not comply with Rule 56 of the Federal Rules of Civil Procedure or Local Rule 56(a) because it "consists entirely of factual and/or legal conclusions devoid of evidentiary support, contains statements that are not

issues of fact or material to this action, and contains statements on which Plaintiff is not competent to testify." (R. Doc. 34 at 3). BMA also argues that Plaintiff's Motion fails on the merits. (R. Doc. 34 at 5-10).[2]

BMA submits a "Statement of Material Facts as to which There Exists Genuine Issues to be Tried" pursuant to Local Rule 56(d). (R. Doc. 34-1). In addition, BMA filed a separate Rule 56(c)(2) Objection to Plaintiff's Summary Judgment Evidence. (R. Doc. 35). Through this filing, BMA argues that Plaintiff's Exhibit A is comprised solely of inadmissible hearsay. (R. Doc. 35 at 2-4). BMA argues that to the extent the "Statement of Uncontested Material Facts" (R. Doc. 29-2) is submitted by Plaintiff as a declaration and/or affidavit in support of summary judgment, it "is in improper form and is conclusory, self-serving, demonstrably inaccurate and filled with statements about which Plaintiff is incompetent to testify." (R. Doc. 25 at 4-9).

## II.   Law and Analysis

### A.   Summary Judgment Standard

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

---

[2] BMA suggests that Plaintiff does not seek summary judgment on her race discrimination and retaliation claims. (R. Doc. 34 at 1 at 2). Considering that Plaintiff ultimately prays for a judgment of liability on all of her claims, the Court will include these claims in its analysis.

3

(1986). However, summary judgment must be entered against the plaintiff, if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

Local Rule 56(a) provides that "[e]very motion for summary judgment shall be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The Court need only consider "cited materials" and may ignore other materials in the record. Fed. R. Civ. P. 56(c)(3); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . .").

Furthermore, only evidence that is competent, or admissible, may be used to support summary judgment. *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). "'[U]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Serna v. Law Office of Joseph Onwuteaka*, P.C., 614 F. App'x 146, 153 (5th Cir. 2015) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)).

Given the foregoing legal standards, the Court will only consider the statements in Plaintiff's Exhibit A to the extent they are directly cited in Plaintiff's Motion for Summary

4

Judgment (R. Doc. 29), Memorandum in Support (R. Doc. 29-1), and Statement of Uncontested Material Facts (R. Doc. 29-2).[3]

### B.     Title VII Claims

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race," among other things. 42 U.S.C. § 2000e-2(a)(1).  Title VII also makes it unlawful for an employer to retaliate against an individual for opposing discrimination or otherwise participating in activity protected by the statute. 42 U.S.C. § 2000e-3(a).  Disparate treatment claims and retaliation claims under Title VII typically utilize the *McDonnell Douglas* burden-shifting proof structure established by the Supreme Court. *See McDonnell Douglas, Corp. v. Green*, 411 U.S. 792, 802-03 (1973).[4]

#### 1.     Racial Discrimination (Disparate Treatment)

For disparate treatment claims, the *McDonnell Douglas* framework requires a plaintiff to first establish a *prima facie* case of discrimination by demonstrating the plaintiff: (i) belongs to a

---

[3] Plaintiff's Statement of Uncontested Material Facts only references Exhibit A for the proposition that all "allegations and responses" submitted in Exhibit A are "true, valid, and based on [her] own personal knowledge, information, and belief." (R. Doc. 29-2 at 3).  Plaintiff appears to sign the Statement of Uncontested Material Facts as her own notary.  Because Plaintiff counsel's signature also appears on the Statement of Uncontested Material Facts, the Court will construe that document to constitute an affidavit in support of the submission of Exhibit A as summary judgment evidence.  The Court will, however, only refer to Exhibit A to the extent Plaintiff specifically cites to that document in support of facts asserted in her Motion, Memorandum, and Statement of Uncontested Material Facts.  Plaintiff does not cite any of her deposition testimony in support of summary judgment.

[4] Because the *McDonnell Douglas* framework is applicable to alleged violations of Title VII and other related statutes, the Court relies on relevant cases decided under all applicable statutes. *See, e.g., Turner v. Kan. City S. Ry.*, 675 F.3d 887, 891-92 (5th Cir. 2012) (applying *McDonnell Douglas* to Title VII); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (applying *McDonnell Douglas* to an ADA claim); *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) ("While the Supreme Court has not definitively resolved whether it is, we are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases.") (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009) ("[T]he Court has not definitively decided whether the evidentiary framework of *McDonnell Douglas* utilized in Title VII cases is appropriate in the ADEA context.") (internal citations omitted)).

protected class; (ii) is qualified for the position at issue; (iii) was subject to an adverse employment action under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp*, 411 U.S. at 802.[5]  Once established, the burden shifts to the defendant to "produce admissible evidence that [its] decisions were based on legitimate, nondiscriminatory reasons." *Turner v. Kansas City. S. Ry. Co.*, 675 F.3d 887, 900 (5th Cir. 2012); *see also McDonnell Douglas*, 411 U.S. at 802-803.  If the defendant carries its burden, the plaintiff must prove by a "preponderance of the evidence that the legitimate reasons offered . . . were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In the context of establishing a *prima facie* case of discrimination, an adverse employment action means an "ultimate employment decision such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).[6] Title VII does not cover "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Burger v. Central Apartment Mgmt.*, 168 F.3d 875, 878 (5th Cir. 1999)).  Major changes in compensation, duties, and responsibilities likewise constitute ultimate employment actions. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 n. 8 (5th Cir. 2004) (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 770 (5th Cir. 2001)).  Allegations of unpleasant work meetings, verbal reprimands and improper work requests do not constitute

---

[5] The Supreme Court recognized that the standard is not inflexible, as "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations." *Id.*, at 802, n.13. *See also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Thompson v. City of Waco, Texas*, 764 F.3d 500, 507 (5th Cir. 2014) (looking to whether plaintiff has shown that he was treated less favorably than other similarly situated employees outside of his class).
[6] The Supreme Court has abrogated the "ultimate employment decision" standard in the *retaliation* context. *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 61-65 (2006).  The "ultimate employment decision" standard, however, remains controlling for discrimination claims under the substantive provisions of Title VII. *McCoy*, 492 F.3d at 559-60.

actionable adverse employment actions. *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) (citing *Burlington Northern*, 548 U.S. at 68); *see also Liddell v. Northrop Gumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 457 (5th Cir. 2011) (disciplinary warnings that did not result in any type of reduced wages, terminations, or layoffs, or any other ultimate employment action are not actionable under Title VII). "Transfers, denial of paid leave, and suspensions can all be ultimate employment actions." *Moore v. True Temper Sports, Inc.*, No. 10-178, 2011 WL 5507401, at *1 (N.D. Miss. Nov. 10, 2011) (citing cases).

With regard to her claim of discrimination, Plaintiff provides a brief one-page section discussing the legal standards for establishing a claim for harassment, not disparate treatment, and complains that BMA did not provide a witness list in response to an interrogatory request. (R. Doc. 29-1 at 4-5). Plaintiff does not cite any evidence in the record establishing a *prima facie* case for disparate treatment, including that Plaintiff was subject to an adverse employment action, *i.e.*, an ultimate employment decision.

Accordingly, Plaintiff has not established that there are no genuine issues as to any material fact regarding the establishment of Plaintiff's *prima facie* claim of discrimination, much less that Defendant's liability with regard to discrimination is established.

### 2. Retaliation

For retaliation claims, "a plaintiff must first show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy*, 492 F.3d at 556-57 (Title VII) and *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (ADA)). Once the plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to state a legitimate, non-

retaliatory reason for its decision." *Feist*, 730 F.3d at 454. If the employer presents such a reason, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation" *Id*. "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id*. (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)).

Plaintiff does not make any effort to establish a *prima facie* case for her retaliation claim. In support of summary judgment on this claim, at most Plaintiff asserts that she "voiced [certain] harassing conduct by calling the employee action line" and on "April 24, 2013, the plaintiff was contacted for investigation purposes on her call making it known that her supervisor was engaging in berating conduct by her engaging in racial slurs towards the plaintiff." (R. Doc. 29-1 at 6 (citing Exhibit A at 7-8)). Even if accepted as uncontroverted, these facts establish Plaintiff's participation in a protected activity, but fail to show that there is a causal connection between that protected activity and any adverse action taken by BMA.

Accordingly, Plaintiff has not established that there are no genuine issues as to any material fact regarding the establishment of Plaintiff's *prima facie* retaliation claim, much less that Defendant's liability with regard to retaliation is established.[7]

### 3. Racial Harassment (Hostile Work Environment)

"Where a harassment claim arises out of a supervisor's conduct, 'there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or

---

[7] To the extent the Petition can be construed as raising a retaliation claim pursuant to the ADA, the foregoing analysis is applicable to such a claim.

8

privilege' of employment.'" *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 162-63 (5th Cir. 2007)). To establish a hostile work environment claim, the plaintiff must prove that his or her work environment "was permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment." *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 287 (5th Cir. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)); *Boh Bros.,* 731 F.3d at 453. "Workplace conduct is not measured in isolation; instead, we look to: (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether it was physically threatening or humiliating as opposed to mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the workplace undermines the plaintiff's workplace competence." *Jackson*, 601 F. App'x. at 287 (citing *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325-26 (5th Cir. 2004)). "Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted).

In support of summary judgment on her harassment claim, Plaintiff provides the following factual underpinnings for her claim and references to Exhibit A:

> (See page 2, paragraph 8 of Exhibit A;) wherein Sheryl Wilcutt states "*Blacks are known to turn on each other whether whites are involved or not!*' Wilcutt further engaged in derogatory epithets referring to the black employees as *gals*, *and work horses*, *berating and placing them in the class of monkey's!* (See page 7, paragraph 5, of exhibit A)
> . . .
> On *page 8 of Exhibit A* the plaintiff noted her supervisor referring to *black men as having "big cocks"*, which the plaintiff noted as a racial slur and found offensive.

(R. Doc. 29-1 at 4, 6) (emphasis in original).

9

Even if uncontroverted, these facts do not establish that Plaintiff was subject to a hostile work environment as a matter of law.  Plaintiff provides no supported factual context for the timing and frequency of these comments which precludes the court from determining whether the conduct was so severe or pervasive as to affect the terms and conditions of Plaintiff's employment.  Without additional context, these facts constitute offensive utterances, offhand comments, and/or inappropriate teasing that do not rise to the level of severe or pervasive conduct based on race. *See Faragher*, 524 U.S. at 778.

For the foregoing reasons, Plaintiff has not established that she is entitled to summary judgment on her claim of racial harassment.

### C. ADA Claims

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  A plaintiff is "qualified individual" under the ADA if he is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

"To prevail on a claim of discrimination based on failure to accommodate a disability, the plaintiff must show that (1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation." *Blackard v. Livingston Par. Sewer Dist.*, No. 12-704, 2014 WL 199629, at *5 (M.D. La. Jan. 15, 2014) (citing *Mzyk v. North East lndep. Sch. Dist.,* 397 F. App'x 13, 16 n.3

(5th Cir. 2010) (citations omitted)).[8]  The ADA requires employers to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). However, "[t]he ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) (holding employer was not required to accommodate firefighter who could not fight fires); *see also Barber v. Nabors Drilling U.S.A., Inc.,* 130 F.3d 702, 709 (5th Cir. 1997) ("We cannot say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions.").

Plaintiff has not established that she is entitled to summary judgment on her ADA failure-to-accommodate claim.  At most, Plaintiff establishes that her lymphedema, which stems from breast cancer treatment, is a qualified disability. (R. Doc. 29-1 at 5-6); *see EEOC v. Womble Carlyle Sandridge & Rice, LLP*, No. 13-46, 2014 WL 2916851 (M.D.N.C. June 26, 2014). Otherwise, Plaintiff has not pointed to any evidence establishing the remaining elements of her failure to accommodate claim.  As such, summary judgement in favor of Plaintiff is inappropriate.[9]

---

[8] Plaintiff raises no allegations of an ADA violation based on hostile work environment and/or retaliation.
[9] It also appears that Plaintiff is now attempting to raise, through her memorandum in support of summary judgment, a new claim that BMA violated the ADA by creating a hostile work environment. (R. Doc. 29-1 at 5).  To the extent Plaintiff is attempting to modify her Petition to allege such a claim, that relief is denied as untimely and unsupported by the record.

## III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (R. Doc. 29) is **DENIED**.

Signed in Baton Rouge, Louisiana, on September 9, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**